NORTH MIAMI CONSOLIDATED SCHOOL DISTRICT AND STATE BOARD OF TAX COMMISSIONERS, CARLETON PHILLIPPI, DURWOOD STRANG, AND TAYLOR I. MORRIS, STATE OF INDIANA, EX REL. NORTH MIAMI CONSOLIDATED SCHOOL DISTRICT *v.* STATE OF INDIANA, EX REL. MANCHESTER COMMUNITY SCHOOLS, PERU COMMUNITY SCHOOLS, SCHOOL CITY OF WABASH, INDIANA, METROPOLITAN SCHOOL DISTRICT OF WABASH, INDIANA, FOR THE USE OF UPPER WABASH VOCATIONAL SCHOOL.

[No. 371S76. Filed August 14, 1973. Rehearing denied October 5, 1973.]

*Lynn A. Ford,* Wabash, *Frank E. Spencer,* Indianapolis, attorneys for appellant North Miami Consolidated School District. *Theodore L. Sendak,* Attorney General, *Joseph S. Van Bokkelen,* Deputy Attorney General, attorneys for appellant State Board of Tax Commissioners.

*Charles R. Tiede, Plummer Tiede Magley & Metz,* of Wabash, for appellees.

HUNTER, J.—This appeal arises as a result of a dispute over a school participation agreement which formed Upper Wabash Vocational School. The original parties to the agreement were Peru Community Schools, School City of Wabash, and

the Metropolitan School District of Wabash County. The purpose of the agreement was to provide for the operation, control, and maintenance of an area vocational school. The plan was approved by the State Board of Education, and shortly thereafter Manchester Community Schools became a party to the participation agreement on July 12, 1965. The plaintiff, North Miami Consolidated School District, joined as a participant on January 15, 1969. The administrative control of Vocational was vested in a Board of Managers which was composed of the heads of the participating school corporations. One of the primary functions of the board was to determine Vocational's yearly budget and to proportion the fiscal outlay to each of the participating schools:

> "(a)ll expenses incurred by the Board of Managers in the operation, control and maintenance of such school for any school year shall be apportioned to the Participating School Corporations in the proportion the total adjusted assessed valuation of each bears to the aggregate assessed valuation of all Participating School Corporations. . . ."

> "It shall be the duty of the Board of Managers to prepare each year a budget for the school in the manner and within the time required by law. Such budget shall set forth an estimate of the proportionate amounts of such budget which will be charged to the Participating School Corporations upon the basis herein provided. Copies of the preliminary budget estimate, together with the proportionate amounts thereof to be charged to the Participating School Corporations, shall be delivered to the proper school officials of the respective Participating School Corporations on or before July 15 of each year. Such school officials shall incorporate in their respective school budgets the amount so apportioned to their school corporations."

The participation agreement additionally stated that future facilities for Vocational "shall be provided at such time and . . . cost as may be determined by the Participating School Corporations." On July 1, 1970, North Miami determined to unilaterally withdraw from the Board of Managers of Vocational without the consent of the other participating schools. North Miami contended that it had no obligation to pay a share

of the cost of construction of new vocational facilities during the fiscal year of 1971.

On September 4, 1970, North Miami commenced the instant action seeking a declaration of its rights and liabilities under the school participation agreement. The defendant participating schools counter-claimed and also filed a third party complaint against North Miami and joined the State Board of Tax Commissioners as a third party defendant. The participating schools moved for summary judgment on February 18, 1971. Summary judgment was granted and from that adverse judgment North Miami appeals. Additionally, the Tax Commissioners are appealing the overruling of their motion to dismiss. For reasons of clarity, we shall treat the two consolidated appeals independently.

## A. *SUMMARY JUDGMENT*

Following the filing of the various pleadings, a pre-trial conference was held on February 8, 1971. The trial court issued its pre-trial order and delineated the issues as follows:

"Comes now the parties by counsel and pretrial conference is held. The Court, based upon the pleadings herein, finds the following issue of law, namely:

"(a)   Whether plaintiff, North Miami Consolidated School District, as a participating School Corporation of the Upper Wabash Vocational School, created pursuant to Burns, Indiana Statutes, Anno., Section 28-6306, can unilaterally withdraw as a participating school corporation, in violation of Burns, infra Section 28-6307?

. . .

"The Court further finds, based upon the pleading herein, the following issues, namely:

"(a)   The obligation of North Miami Consolidated School District as a participating school corporation of the Upper Wabash Vocational School, to pay operating expenses of said Vocational School, pursuant to a supplemental agreement for Admission of Additional participating school corporation in Upper Wabash Vocational School, dated January 15, 1969.

"(b)   The obligation of North Miami Consolidated School District as a participating school corporation of the Upper

Wabash Vocational School, to pay construction costs for a school building for said Vocational School. Cause continued until further order of Court."

The express purpose of Trial Rule 16, Indiana Rules of Trial Procedure, is to provide for a pre-trial conference in which to simplify the issues raised by the pleadings and to define these issues within a pre-trial order. Trial Rule 16(J) reads in pertinent part as follows:

*"(J)    Pre-trial order.* The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limit the issues for trial to those not disposed of by admissions or agreement of counsel, *and such order when entered shall control the subsequent course of action, unless modified thereafter to prevent manifest injustice . . ."* (Emphasis added.)

The trial court in the instant case issued such an order, *supra,* which was not objected to by North Miami. Nor did North Miami subsequently move to modify the pre-trial order. Thus, the order has supplanted the allegations raised in the pleadings and controls all subsequent proceedings in the case. When a pre-trial order specifies the issues of the case, the parties will not be permitted to go into other issues, unless the pre-trial order is amended. *Fernandez* v. *United Fruit Co.* (2nd Cir., 1952), 200 F. 2d 414, *cert. denied* 345 U.S. 935 (1953). Prior to the adoption of our Trial Rule 16, which is based in pertinent part on the Federal Rules of Civil Procedure, Indiana law was to the same effect on the issue of the pre-trial conference. *Johnson et al.* v. *Glassley et al.* (1949), 118 Ind. App. 704, 83 N. E. 2d 488. Therefore, North Miami's contention that it was denied a trial on the issues raised by the pleadings is without merit. The issues in this case are those found by the trial court's pre-trial order, *not* the issues raised by allegations in the pleadings.

On the question of whether summary judgment was properly granted, we are concerned here with an inquiry as to the

existence of genuine issues of fact. Summary judgment is only proper where there is no genuine issue of material fact and therefore a party is entitled to judgment as a matter of law. *Central Realty, Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N. E. 2d 383.

The trial court was not functioning in a vacuum when it determined that no issue of fact was present in the instant case. The trial judge had before him the admissions from the pleadings, stipulated facts from the pre-trial conference, the participation agreement binding North Miami, various interrogatories and answers, the record of minutes from North Miami's board meetings, and numerous sworn affidavits from the parties involved.

Averments in a pleading to which a responsive pleading is required are admitted when not denied. TR. 8(D). North Miami's complaint alleged:

"3.    That Plaintiff did, by a certain Supplemental Agreement for Admission, a copy of which is attached hereto, made a part hereof, and marked 'Exhibit A', enter into an agreement with all of the Defendants, except the Board of Managers of The Upper Wabash Vocational School, for the operation of a Vocational School to be located in or near Wabash County, Indiana.

"4.    That prior to said time, the said Vocational School had been organized on the 3rd day of July, 1965, by a certain agreement made and entered into between Peru Community Schools, School City of Wabash, Indiana, and the Metropolitan School District of Wabash County, Indiana, a copy of which said agreement is attached hereto, made a part hereof, and marked 'Exhibit B.'

"5.    That under the terms and conditions of said first-mentioned agreement, namely Exhibit A, Plaintiff agreed to abide by the terms and conditions of said Exhibit B."

Exhibit A, appended to and incorporated in the complaint recites:

"WHEREAS, Upper Wabash Vocational School is a cooperative vocational school organized under and pursuant to Chapter 24 of the Indiana Acts of 1913, as amended; and,
"WHEREAS, the plan of organization and administration

of Upper Wabash Vocational School is set forth in a contract for the establishment of Upper Wabash Vocational School between Peru Community Schools, School City of Wabash and The Metropolitan School District of Wabash County, dated July 3, 1965, approved by the Indiana State Board of Education on July 9, 1965, supplemented by an agreement for the admission of Manchester Community Schools as a participating school corporation dated July 12, 1965; and

"WHEREAS, Article VI, Section 3 of the Contract for establishment of Upper Wabash Vocational School provides:
" 'School Corporations abutting upon the boundary of any participating school corporation may become parties to this agreement by complying with such conditions as may be prescribed by the Board of Managers and the State Board of Education.'; and,

"WHEREAS, North Miami Consolidated School District, by action of its Board of Education on November 19, 1968, ratified the aforesaid agreements, and voted to become a participating school corporation in Upper Wabash Vocational School; . . ."

North Miami's Exhibit B, again attached to and incorporated in its complaint, recites in part:

"WHEREAS, it is the intention of the said school corporations (hereinafter referred to collectively as 'Participating School Corporations') to establish an area vocational educational school under the authority of Section 4, Chapter 24 of the Acts of the Indiana General Assembly for year 1913, and all acts amendatory thereof and supplemental thereto; and,

"WHEREAS, the Boards of the Participating School Corporations have severally considered the establishment of such school, and have determined that co-operative effort will permit the Participating School Corporations to make the most effective use of their powers on a basis of mutual advantage and thereto provide services and facilities that will accord best with geographic, economic, population and other factors influencing the needs and development of the local communities; and

"WHEREAS, The Participating School Corporations intend to provide facilities for said school directly from funds of said Participating School Corporations and to the extent that such funds are insufficient to provide such facilities, by the lease of such facilities pursuant to the provisions of

Chapter 272 of the Acts of the Indiana General Assembly for the year 1947, and all acts amendatory thereof and supplemental thereto; and . . ."

Through its undenied allegations, North Miami has admitted it is a participating school under a valid participation agreement obligating North Miami to support Upper Wabash Vocational School. Further, North Miami stipulated:

"The total amount of funds required to be raised by the participating school corporations through levy of taxes for the operation of Upper Wabash Vocational School for calendar year 1971 is $189,690.00; and that if North Miami Consolidated School District is obligated by contract to pay its share of such operating costs, then the amount of funds required to be appropriated and raised by North Miami Consolidated School District in its 1970 budget is an amount of the said $189,690.00 which is in the same ratio to said total as the total adjusted assessed valuation of taxable property of North Miami Consolidated School District bears to the combined total adjusted assessed valuation of taxable property of Manchester Community Schools, North Miami Consolidated School District, Peru Community Schools, School City of Wabash, Indiana and the Metropolitan School District of Wabash County, Indiana, for the year 1970, for taxes payable in the year 1971."

Interrogatories, which were before the trial court when it granted summary judgment, established *inter alia* that North Miami school officials were aware of the proposed construction of new facilities at Vocational. Questions were propounded to the Superintendent of North Miami Consolidated Schools:

"Interrogatory No. 6. Subsequent to its becoming a member of Upper Wabash Area Vocational School did North Miami Consolidated School District adopt a resolution to obtain an additional appropriation from its general fund to pay its proportionate share of the cost of construction of the Vocational School Building?

"Answer: Yes, the North Miami Board of School Trustees did adopt a resolution to obtain an additional appropriation from the general fund to pay its proportionate share of the cost of construction of the Upper Wabash Area Vocational School Building.

"Interrogatory No. 7. If your answer to the preceding Interrogatory is yes, state on what date the resolution for such additional appropriation was adopted by North Miami Consolidated School District?

"Answer: The resolution referred to in Interrogatory Number six was adopted on June 2, 1970."

In support of their motion for summary judgment, the defendants filed numerous affidavits showing that North Miami was aware of the proposed construction at Vocational, that the architect employed was approved by North Miami, that the Superintendent of North Miami Schools certified correct copies of minutes of North Miami School Board Meetings, and that these minutes reflected the Board's awareness that construction was planned at Vocational. Further, Donald Musselman, a member of North Miami's Board of Education, swore by affidavit that he was a member of Vocational's Board of Managers until June 30, 1970, and that the other members of North Miami's Board of Education were informed by him of the proposed facilities for Vocational. Four members of North Miami's School Board swore by affidavit to the above facts.

In opposition to the motion for summary judgment, North Miami filed a single affidavit. The sworn statement of Forrest Long, a school board member, is that he was unaware of the plans to purchase land on which to construct new facilities for Vocational. It is on the strength of this one affidavit that North Miami urges a genuine issue of fact exists which must be resolved by trial. We do not agree. Whether or not Long had personal awareness of the construction plans is not material to the issues in this case. It is uncontroverted that the plans were discussed at School Board meetings, and the plans were subsequently approved. This is reflected in North Miami's Board minutes on January 21, 1969:

"A brief report on the meeting with the Upper Wabash Area Vocational School in the previous week reflected the progress toward *land purchase, building plans,* and the gradual involvement of North Miami in the vocational pro-

gram. It was pointed out that the contracts for North Miami's entry into the program will not be official until after the state officials have given approval to the merger. It was noted that a tour of vocational school facilities is scheduled for January 22." (Emphasis added.)

The trial court found as a matter of law that North Miami was estopped to deny that the acts of its representatives on the Board of Managers did not bind North Miami to support the construction at Vocational. It concluded that no genuine issue of material fact was presented by Long's affidavit. Summary judgment is intended to obviate the need for a trial when no genuine issue of fact exists. *Central Realty, Inc.* v. *Hillman's Equipment, Inc., supra.* Accepting Long's allegations as true, which we do, does not raise a genuine issue of material fact for trial. Certainly, this Court must guard against an improvident award of summary judgment when genuine issues of fact exist. But under the facts of this case, we agree with the trial court's ruling that no genuine issue of fact exists for adjudication by trial.

The remaining question presented by the instant case is whether the trial court applied the correct law to the established facts. The pertinent statutory guidelines are contained in IC 1971, 20-10-20-4; Ind. Ann. Stat. § 28-6307 (1970 Repl.), which reads in applicable part as follows:

> "*Vocational education—Joint schools—Boards.*—Two [2] or more school corporations may cooperate to establish and maintain schools or departments for vocational education, or in supervising the same, whenever the school boards of such school corporations shall so determine and apportion the cost thereof among the school corporations cooperating. Whenever such cooperative schools or departments have been determined upon by such cooperating school corporations, the heads of such cooperating corporations, or their delegated representatives shall constitute a board for the management of such school or department; such board may, by resolution adopted by a majority of the actual number of members of the board, designate three [3] or more of its number to constitue an executive committee, which committee, to the extent provided in said resolution, shall have and exercise all of the authority of the board in the manage-

ment of the school; Provided, That such committee shall submit a written summary of its actions to the full board at least semiannually. *Such board may adopt a plan of organization, administration and support for such school or department, and the plan, if approved by the state board of education* [state board of vocational and technical education], *shall constitute a binding contract between the cooperating school corporations, which shall be canceled or annulled only by the vote of a majority of the school boards of the cooperating school corporations* and the approval of the state board of education [state board of vocational and technical education]. Such board may, following approval of said plan by the state board of education [state board of vocational and technical education], enter into an agreement to acquire sites and buildings and the equipment thereof by lease or purchase, suitable for such program, including such facilities as might be made available under the provisions of chapter 273, of the Acts of 1947 [§§ 28-3901—28-3916]. (Emphasis added.)

It is clear that the above statute answers in the negative the question of whether North Miami can unilaterally withdraw from the Board of Managers of Vocational. The relationship of the parties may be dissolved only by majority vote of the participating school boards. Therefore, North Miami remains obligated under the participation agreement.

## B. *THE MOTION TO DISMISS*

Prior to the granting of summary judgment, the participating schools made application to the trial court for an order of mandate *pendente lite* against the State Board of Tax Commissioners. The application was sustained and the order was issued on February 24, 1971. The participating schools sought to mandate the Tax Board to include in the budget and the tax levies of North Miami Consolidated School District for the year of 1971, a sum which represented the assessed share owed by North Miami as a participating school under the agreement discussed, *supra*.

The Tax Board alleges that the above order was not valid, because the Tax Commissioners were not a party to the contract between North Miami and the other participating

schools. In essence, the Tax Board takes the position that the third party complaint did not set out a good claim against it.

However, it is an admitted fact that but for the appropriation mandated, North Miami did not have sufficient funds in its budget with which to pay its lawful share to Upper Wabash Vocational School. It is also uncontroverted that North Miami accepted the benefit of the mandated funds and did pay Vocational. Additionally, the Tax Board acknowledges that it had the power to modify North Miami's 1971 budget.

The parties have presented to this Court erudite briefs and esoteric discussions on questions ranging from joinder of proper parties to requirements for mandate. But in the final analysis, a decision by this Court that the order of mandate was contrary to law would not affect the 1971 fiscal outlay of North Miami. Therefore, we do not reach a discussion of the various issues raised, but choose instead to dismiss as moot the appeal of the State Board of Tax Commissioners. This Court will dismiss an appeal when it involves a moot question unless the question involves a matter of great public interest. *Gardner* v. *Grills* (1961), 242 Ind. 29, 175 N. E. 2d 696. We find no great public interest which will be served by an opinion on this matter now before us.

For the foregoing reasons discussed, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 300 N. E. 2d 59.